**FA'ALEAOGA MALOATA, of Malaeloa, Plaintiff**

**v.**

**TUILEFANO MALOATA, of Malaeloa, Defendant**

No. 126-1966

High Court of American Samoa

Civil Jurisdiction, Trial Division

August 8, 1966

Apelu, Counsel for Plaintiff.
Fofo, Counsel for Defendant.

OPINION OF THE COURT

ROEL, *Associate Justice.*

This action grew out of a Petition for Injunction filed by the Plaintiff on July 5, 1966, alleging that the Plaintiff was acting for himself and on behalf of the Maloata and Tuilefano Families, that the Defendant was going to build his living house on the land, Aniutea, which has been the traditional site of the guest house of the Maloata and Tuilefano Families; that the type of house the Defendant was to build was of the Government disaster housing type. The Petition further alleged that the matter had previously been referred to the Secretary of Samoan Affairs and that pursuant to Section 9.0113 of the Code of American Samoa, the Secretary of Samoan Affairs had issued a cease and desist order against the Defendant enjoining him from tearing down the existing guest house then located on said land, and ordering the Defendant not to erect a "hurricane

type house" thereon until the matter was discussed at the office of Samoan Affairs on July 5, 1966, at 10:00 a.m., and advising the Defendant that said order would remain in effect until further notice from the Office of Samoan Affairs, or until an order was issued by the Courts. Plaintiff and Defendant are brothers.

At the time the Petition for Injunction was filed, it was ascertained that the guest house had already been torn down on July 4, 1966. So the only remaining issue was the building of the house on the land in question.

Both the Plaintiff and Defendant testified at the trial. The Plaintiff, Fa'aleaoga, also known as Vitale, contended that the land on which the Defendant was to build his house under the Government grant program for hurricane housing was the traditional site of the guest house of the Tuilefano-Maloata Families; that he was 44 years old and that the guest house had always been on said land for as long as he knew and many years before that; that the house which was partially damaged by the hurricane had been built as a guest house of the Tuilefano-Maloata Families.

Counsel for Plaintiff introduced into evidence a copy of the lease executed in connection with the erection of a grant house to replace the previous house on the land in question which had been damaged or destroyed by the hurricane of January, 1966. The lease shows the Defendant as both lessor and lessee, and reads in part as follows: "That the Lessor hereby leases to the Lessee and the Lessee hires from the Lessor, for the purpose of constructing *a private residence for the lessee and his Family*, (emphasis supplied) those certain premises in Land Square 32, Unit B, situated in Malaeloa Village, Tualauta County, Western District, American Samoa, and more particularly described as follows, to wit . . . ." Said lease is shown as recorded in Volume 3B, Register of Native Leases, Page 96. Plaintiff's

signature appears with eight (8) others on the lease as Family members, but the Plaintiff testified that he was not told that the house would be built on the traditional site of the Tuilefano-Maloata guest house.

Defendant Tuilefano testified that he was 67 years old; that he previously held the title Maloata; that he and his wife lived in the house that was damaged by the hurricane and were living in it at the time the hurricane struck; that the matai of the family had a right to live in the guest house; that his father had erected the guest house which was destroyed; that there were other guest houses located at the same site before the last one was built; that the Committee had gone to check the house and had approved the grant; that other members of the Family had signed with him the request for the grant, including Vitale. Tuilefano also stated that he was now building another house in the back of the guest house site, a palagi-style house not yet completed.

Tuilefano testified that the house to be built on the traditional site of the guest house was to be used to receive guests of the Tuilefano-Maloata Families; that if he ever relinquished the matai title, the new matai would be entitled to occupy the house to be built on the land in question; that he agreed with the Plaintiff that the land where the replacement house was to be built is the communal land of the Tuilefano-Maloata Families; that if he, Tuilefano died, the ownership of the house to be built on the traditional site of the guest house would pass to the next holder of the title; that it was understood by the Family that the ownership of the house would pass to the next title holder; that if he, Tuilefano, died, his wife and children would move out of the guest house to allow the next title holder to have it. He also testified that Chief Le'iato had given him oral authority to tear down the old guest house after the Cease and Desist Order of June 28, 1966. Tuilefano tes-

tified that he would be agreeable to a change in the lease form executed in connection with the erection of a guest house so that it would reflect that the house to be erected on the land in question would be the guest house of the Tuilefano-Maloata Families, even though he, Tuilefano, and his family were going to live in it while he held the title Tuilefano.

At the end of the trial it appeared that there was unanimous agreement between the Parties that the land on which the new house was to be built was the traditional site of the guest house of the Tuilefano-Maloata Families. Further the Defendant had admitted in open court that he recognized the house to be built would be considered as the guest house of the two families, with the understanding that he, the Defendant, and his family were to live in said house and receive guests in it, and with the further understanding that the Defendant and his family were to vacate said house when he no longer held the matai title, the house to pass to the next title holder.

In view of the evidence, and the admission and agreement by the Plaintiff and Defendant that the land in question is the communal land of the Tuilefano-Maloata Families, and the traditional site of the guest house of said Families, and the further assurance of the Defendant that said house when built would be considered the guest house of the Tuilefano-Maloata Families, the Court, at the close of the trial withheld final judgment to give the Defendant an opportunity to have the lease agreement related to the building of a house with grant money amended to read that the said house built on said land would be the guest house of the Tuilefano-Maloata Families, even though he, Tuilefano and his family were to live in said house. The Court gave the Defendant until Friday, July 22, 1966, at 4:00 p.m. to present to the Court the said amended lease, in which case, the objection of the Plaintiff having been cured, the petition

for injunction would be dismissed. If the Defendant failed to produce the said amended lease agreement, then the Court was to issue a written decree disposing of the case.

On July 22, 1966, the Defendant came to the Office of the Clerk of the High Court and reported not only that it had not been possible to get the authorities handling the grant house program to amend the lease agreement to reflect the fact that the land in question was the traditional site of the guest house of the Tuilefano-Maloata Families and that the house to be built was to be considered as the Families' guest house, but at the same time the Defendant reported that the house had already been completely built on the land in question since the hearing on this case on July 18, four days before.

After considering the testimony and the evidence, and the agreed testimony of Plaintiff and Defendant, this Court is of the unanimous opinion that the house built on the land in question was built on the traditional site of the guest house of the Tuilefano-Maloata Families of Malaeloa.

The Court is further of the unanimous opinion that the house blown down or damaged by the hurricane of January, 1966 in place of which grant house was authorized and built was the guest house of the Tuilefano-Maloata Families.

The Court is further of the unanimous opinion that the new grant house built on the traditional site of the Tuilefano-Maloata guest house is now the guest house of the said two families, even though Tuilefano and his family will live therein while he holds the Tuilefano title. Once Tuilefano, the Defendant, ceases to hold the title, either through resignation or death, the right of control of said house passes to the next title holder and the Defendant and/or his family will vacate the said premises.

While the original request for injunction becomes moot by the fact that the building of the house is a fait accompli, the Court will nevertheless issue the following Decree:

It is hereby ORDERED, ADJUDGED AND DECREED as follows:

1. That the land in question in this case is the traditional site of the guest house of the Tuilefano-Maloata Families.

2. That the house destroyed or damaged on said site by the hurricane of January, 1966, was the guest house of said two families, and had been so for many years.

3. That the house built to replace the destroyed or damaged house on said site is the guest house of the Tuilefano-Maloata Families.

4. That although the Defendant and his family may occupy said house as their living quarters, once the Defendant resigns or otherwise relinquishes the title, the said house will be under the control and authority of the matai of the Tuilefano-Maloata Families.

Court costs in the amount of $12.50 to be paid by Tuilefano within 30 days.